REDMANN, Chief Judge.
Plaintiff in this workers’ compensation case appeals from a judgment ordering that “the consent judgment of settlement verbally approved by the Court ... is to be given full force and effect” and denying plaintiff’s motion to set aside his earlier verbal consent in the presence of the judge. The question is whether the settlement had already become binding before plaintiff moved to withdraw his consent although no joint petition had been filed to approve the settlement and no judgment had been signed.
The case had been set for trial on the merits on March 25, 1980. A transcript of proceedings of that day begins with the trial judge announcing
We have reached a settlement in the amount of $12,500 which the Court feels, under the Dusang [v. Beck ] case [379 So.2d 775 (La. App. 4 Cir. 1979)[1] ], is a fair approved settlement. There would be more money had the Dusang case not come out, so to speak .... [Addressing plaintiff] Do you understand everything I have said? A. Yes, sir. Q. There will be no more monies, do you understand that? A. Yes, I do. Q. [Addressing plaintiff’s counsel] Mr. Exnicios, as his attorney you approve of the settlement? A. Yes. THE COURT: Let the record reflect the Court will approve the settlement. You process the papers and get the proper release and I will sign the judgment.
Dusang had been decided by this court on December 6, 1979. It had awarded only partial disability benefits to a worker who continued to work although in substantial pain. That was allegedly plaintiff’s situation. Because partial disability benefits are computed only on the difference in wages, La.R.S. 23:1221(3), and plaintiff was continuing to earn wages, the proposed settlement was a reasonable one in the light of Dusang as of March 25, 1980.
But on April 7, 1980, the Louisiana supreme court decided Whitaker v. Church’s Fried Chicken, Inc., 387 So.2d 1093 (La. 1980), which awarded total disability benefits to a worker who continued to work although in substantial pain.
On May 12, 1980, prior to any further action of record in the present case, plaintiff moved for an appeal from the “consent judgment rendered and approved” March 25, pointing out that Whitaker had meanwhile been decided. That motion was on May 13 “Refused: cannot appeal a workmen’s compensation settlement judgment.”
On May 13 plaintiff filed a rule to set aside the “consent judgment” of March 25 and that rule was heard July 14 on stipulated facts. The stipulation was that plaintiff and his counsel first orally informed de *527 fense counsel that they “withdrew and refused to go through with” the settlement, but that they did “as a courtesy to” defense counsel place their signatures on the joint petition for compromise and receipt for $12,500 already prepared by defense counsel.
In light of that stipulation, we first conclude that plaintiff’s signing of the joint petition was not intended to have legal force (and it was in any case not presented to the court before July 14), and we therefore deem the question to be whether prior to the filing of a joint petition and the signing of a judgment, one can withdraw from a proposed workers’ compensation settlement orally agreed to at the time set for trial on the merits and then approved by the trial judge after discussing its terms with the claimant.
We first note that Smith v. Cajun Insulation, Inc., 392 So.2d 398, 401 (La.1980), stressed the mandatory language of La.R.S. 23:1272, governing the procedure for compensation settlements:
A reading of these provisions clearly indicates that the legislature intended to set mandatory guidelines for the approval of a compensation settlement. The parties to the agreement “shall” present a verified petition. The judge “shall, in every case”, discuss the settlement terms with the employee ....
Smith held a settlement annullable for failure of the judge to discuss its terms with the worker, and is thus not squarely controlling in our case.
Jasmin v. Gainey, Inc., 357 So.2d 539, 540-541 (La.1978), also stressed the mandatory language:
L.S.A.-R.S. 23:1272 specifically provides that a workmen’s compensation compromise must be approved by the court upon a joint petition verified by all parties. Therefore, absent compliance with this procedure, there is no settlement.
Jasmin, too, might be distinguished on its facts, but the fact remains that our supreme court has twice in recent years construed the language of R.S. 23:1272 as making compliance with its terms essential to the validity of a settlement.
One might suppose that just as La.C.C. 3071 requires an ordinary compromise to be embodied in a writing before it can become binding, Charbonnet v. Ochsner, 246 So.2d 844 (La.1971), so also R.S. 23:1272 requires the compromise of a workers’ compensation claim to be embodied in a judgment before it can become binding.
Defendant argues that Martin v. Holzer Sheet Metal Wks., Inc., 376 So.2d 500 (La.1979), held the parties to a workers’ compensation case bound by their oral consent at trial time to a judgment thereafter entered, and that the writing requirement of C.C. 3071 is inapplicable in such a case. Martin, however, was not a case of a compromise, but of a confession of judgment for 100% of plaintiff’s demand. Defendant orally confessed judgment for the maximum liability that the law allowed (total and permanent disability benefits plus all medicals) and therefore the plaintiff worker did not compromise his claim in the least: there cannot have been any “bona fide dispute,” R.S. 23:1271, see Dufrene v. Aetna Casualty & S. Co., 298 So.2d 724 (La.1974), that could have been the basis of compromise by the parties. C.C. 3071 defines compromise as “adjust[ment of] their differences by mutual consent ... which every one of them prefers to the hope of gaining, balanced by the danger of losing.” A defendant who agrees to pay 100% has not “adjusted” so as to avoid “the danger of losing,” but has conceded that he or she loses; and the plaintiff who accepts 100% has similarly made no such adjustment, has made no compromise. (What defendant further did in Martin was agree to a lump-sum payment, a matter strictly controlled by R.S. 23:1274, limiting discount to 8% and requiring court approval. But a worker has no right whatsoever to be paid a lump sum, and there equally cannot have been any “compromise” of any differences in that respect.)
Thus Martin is, to repeat, a case not of compromise but of simple confession of judgment.
*528 Martin also differs procedurally from our case in that in Martin the judgment had been orally rendered at the time of the oral agreement and was already signed in accordance with the terms stipulated before any record effort to abort. Martin notes, 376 So.2d at 502, “The employer’s attorney did not object to the provisions of the judgment, insofar as the record shows,” and footnotes at 503, n.2, the contention “based on evidence not in the record ... that he called [his non-agreement with the lump-sum aspect] to the trial judge’s attention to no avail before the judgment was actually rendered and signed.” In our case, the trial judge did not render the judgment at the time of settlement, and the record does show that plaintiff attempted by two separate procedural devices to revoke the proposed settlement prior to any filing of “the papers” the trial judge wanted as a prerequisite to signing the judgment.
Bourgeois v. Franklin, 389 So.2d 358 (La.1980), affords further insight into Martin. Bourgeois was an ordinary action for delic-tual damages in which, during the second day of jury trial, counsel announced in open court that they had reached a settlement whose terms they specified. Bourgeois held that settlement unenforceable because it was not in writing as required by C.C. 3071. Bourgeois distinguished Martin, noting that in Martin the trial judge, “in open court, recited an oral judgment into the record, fully and specifically assented to by the parties,” constituting a “confession of judgment precluding an appeal under C.Civ.P. art. 2085” rather than a mere compromise. Bourgeois itself held that the mere declaration of a settlement in open court and the consequent discontinuance of the lawsuit did not suffice to make the compromise binding: it must first be reduced to writing as required by C.C. 3071.
We conclude that neither Martin nor Bourgeois is controlling. Our case is like Martin in that workers’ compensation, with a statutory requirement of a judgment, is involved rather than ordinary tort, with no such requirement; but it is like Bourgeois in that a compromise is involved rather than a simple confession of judgment.
Our decision, relying in part upon the basic rule that the provisions of the workers’ compensation statute should by liberal construction be enlarged rather than restricted, Hatten v. Olin Mathieson C. Corp., 112 So.2d 135 (La.App. 2 Cir. 1958), is that the attempted compromise of plaintiff’s workers’ compensation claims could not become finally binding upon him, and could not have defeated his entitlement to compensation benefits, until the judgment of approval was signed, and that his record attempts before judgment to withdraw from the proposed compromise precluded a judgment of approval. R.S. 23:1033 provides that “[n]o contract ... or device whatsoever shall operate to relieve the employer . . . from any liability created by this [workers’ compensation] Chapter except as herein provided.” R.S. 23:1272 therefore provides the exclusive device whereby liability may be extinguished by compromise, and until § 1272 has been fully complied with by judgment of approval the employer’s liability may be asserted by the employee. We repeat the words of Jasmin v. Gainey, Inc., quoted above: “absent compliance with the procedure, there is no settlement.”
The judgment appealed from is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs are to await final outcome.

. Affd 389 So.2d 367 (La. 1980). The supreme court distinguished its own intervening Whitaker on the facts.